IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FEDERAL INSURANCE COMPANY,          :
                                    :
        Plaintiff                   :
                                    :  **CIVIL ACTION NO.  3:07-01357**
        v.                          :
                                    :  (JUDGE NEALON)
KDW RESTRUCTURING AND LIQUIDATION   :
SERVICES, LLC, not individually but solely as the :
TRUSTEE OF THE UNI-MARTS LIQUIDATION :
TRUST,                              :
                                    :
        Defendant                   :

**MEMORANDUM**

On July 26, 2007, Federal Insurance Company ("Federal") filed a declaratory judgment

action against Uni-Marts, LLC ("Uni-Marts"). (Doc. 1). The complaint seeks a declaration that

Uni-Marts' insurance policies with Federal do not cover the action against Uni-Marts filed in the

Pennsylvania Court of Common Pleas of Luzerne County by, inter alia, Alliance Trading, Inc.

("Alliance Action"), and that Federal has no obligation to defend or indemnify Uni-Marts in

connection with that action. (Doc. 1). The Alliance Action was brought by persons who

purchased convenience stores in Pennsylvania from Uni-Marts in 2004 and 2005 alleging that

Uni-Marts made misrepresentations and omissions about costs and expenses to induce

prospective buyers. (Doc. 1-5). In the Alliance Action, judgment was entered against Uni-Marts

as a result of a settlement agreement. See Eagle International Services, Inc. v. Uni-Marts, LLC,

No. 11-CV-2007 (Luz. Co. Nov. 16, 2007) (Burke, J). In the case sub judice, Federal asserts that

coverage under the policies is barred by Uni-Marts' failure to meet the policies' notice

requirements, by the contract exclusion of the policies, and by the absence of covered loss. (Doc.

1, pp. 9-10).

On September 19, 2007, Uni-Marts filed an answer and counterclaim asserting affirmative defenses and requesting a declaration that the policies do cover the Alliance Action and that Federal has the obligation to indemnify Uni-Marts for costs and damages from that action. (Doc. 13). On October 12, 2007, Federal filed an answer to Uni-Marts' counterclaim. (Doc. 14). On November 30, 2007, Federal filed a motion for judgment on the pleadings and brief in support thereof (Docs. 20-21); Uni-Marts filed a brief in opposition (Doc. 29) to Federal's motion on December 21, 2007; Federal filed a reply brief (Doc. 31) on January 14, 2008. On June 18, 2008, this Court converted Federal's motion for judgment on the pleadings into a motion for summary judgment and granted the parties time to conduct further discovery. (Doc. 34).

On February 25, 2009, this matter was stayed pending the disposition of Uni-Marts' Chapter 11 Voluntary Bankruptcy Petition. (Doc. 37). On January 30, 2012, pursuant to a stipulation by the parties, the stay was lifted and "KDW Restructuring and Liquidation Services, LLC, not individually, but solely as the Trustee of the Uni-Marts Liquidation Trust" was substituted for Uni-Marts, LLC as the Defendant.[1] (Docs. 43 & 44). Also pursuant to stipulation, the parties agreed on a time-frame for the completion of discovery and the filing of briefs and exhibits regarding the motion for summary judgment. (Docs. 43 & 44).

On May 16, 2012, Federal filed a motion for summary judgment[2], a brief in support

---

[1]Throughout this Memorandum, Defendant will continue to be referred to as Uni-Marts.

[2]Although Federal's motion for judgment on the pleadings (Doc. 20) which was converted to a motion for summary judgment has not been adjudicated, it will be denied as moot and this Court will address this May 16, 2012 motion for summary judgment (Doc. 56) which comes at the completion of discovery pursuant to stipulation by the parties.

thereof, and a statement of facts. (Docs. 56 & 57). Uni-Marts filed a brief in opposition and a statement of facts on June 15, 2012. (Doc. 58). On June 29, 2012, Federal filed a reply brief. (Doc. 59).

Federal now moves for summary judgment on count I of its complaint on two grounds: 1) Uni-Marts failed to give Federal notice of a claim "as soon as practical," and 2) coverage is barred by the policies' contract exclusion. (Docs. 56 & 57). Federal's motion is now ripe for disposition and, based on its latter argument, Federal's motion will be granted. Because this Court finds that coverage for the Alliance Action is barred by the contract exclusion, the other ground for summary judgment need not be addressed.

## I.   LEGAL STANDARDS

### A.  Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). All inferences "should be drawn in the light most favorable to the nonmoving party, and where the

nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore v. Bell Tel. Co., 24 F.3d 508, 512, quoting Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

## B. Construction of the Insurance Policies

Federal and Uni-Marts agree that the insurance policies are to be interpreted under Pennsylvania law. (Doc. 57, p. 26); (Doc. 58, pp. 30-34). Under Pennsylvania law, the interpretation of an insurance contract is a question of law for the court to decide. Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997); see also General Accident Ins. Co. of America v. Allen, 692 A.2d 1089, 1093 (Pa. 1997) ("The task of interpreting a contract of insurance is generally performed by the court."). "The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." Standard Venetian Blind Co. v. American Empire Insurance Co., 469 A.2d 563, 566 (Pa. 1983). A court should read an insurance policy as a whole and construe it according to the plain and ordinary meaning of its terms. Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999); Pac. Indem. Co. v. Linn, 766 F.2d 754, 760-61 (3d Cir. 1985). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer . . . . Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." Minnesota Fire and Casualty Co., v. Greenfield, 855 A.2d 854, 861 (Pa. 2004) (citing Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Insurance Company, 517 A.2d 910, 913 (Pa. 1986)). Courts interpret coverage clauses broadly "to afford the greatest possible protection to the insured," and, accordingly, they

interpret exceptions to an insurer's general liability narrowly against the insurer. Westport Ins. Corp. v. Bayer, 284 F.3d 489, 498 n.7 (3d Cir. 2002) (quoting Eichelberger v. Warner, 434 A.2d 747, 750 (Pa. Super. 1981)). An insurer bears the burden of proving that a contract exclusion or limitation on coverage applies. Koppers Co., Inc. v. Aetna Cas. and Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996). However, while it is the insurer's duty to establish that a policy exclusion applies, if the language of the exclusion is clear and unambiguous, it is to be construed in accordance with its plain meaning. Madison Construction Co. v. Harleysville Mutual Insurance Co., 735 A.2d 100 (Pa. 1999) (Interpreting a policy exclusion as unambiguous and giving plain meaning to its terms; see also Lower Paxon Township v. United States Fidelity & Guaranty Co., 557 A.2d 393, 402 (Pa. Super. 1989).

It should also be noted that the reasonable expectations doctrine is inapplicable sub judice because Uni-Marts is a commercial insured. See Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 440 (3d Cir. 2006) (holding that, under Pennsylvania law, the reasonable expectations of an insured may overcome unambiguous policy language only when the insured is a noncommercial entity); Reliance Insurance Co., 121 F.3d at 905 (recognizing that, as a general matter, "sophisticated insureds may exercise more bargaining power vis-á-vis the insurers, and therefore be in less need of protection from the courts than other insureds"); see also United States Fidelity and Guaranty Co. v. Lehigh Valley Ice Arena, Inc., 121 Fed. Appx. 976, 980 (3d Cir. 2005) (citing Madison Construct. Co., 735 A.2d at 109, n.8.

## II.   STATEMENT OF FACTS

Uni-Marts purchased two insurance policies from Federal for coverage from June 20,

2005 to June 30, 2006 and June 30, 2006 to June 30, 2007. (Doc. 1, ¶ 1); (Doc. 13, ¶ 1); (Doc. 56-2, ¶ 1); (Doc. 58-1, ¶ 1). Both policies supplied coverage for: 1) Directors & Officers Liability Coverage, 2) Fiduciary Liability Coverage, and 3) Kidnap/Ransom & Extortion Non-Liability Coverage. (Doc. 1-2, pp. 1-2); (Doc. 1-3, pp. 1-2). The policies' liability coverage sections "provide claims made coverage, which applies only to 'claims' first made during the 'policy period' or any extended reporting period." (Doc. 1-2, p. 1); (Doc. 1-3, p. 1). The insurance policies include contract exclusions which state that no coverage will be available:

> based upon, arising from, or in consequence of any actual or alleged liability of an **Insured Organization** under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an Insured Organization would have been liable in the absence of the contract or agreement.

(Doc. 1-2, p. 26); (Doc. 1-3, p. 25) (emphasis in originals).

Uni-Marts owned and operated gas stations/convenience stores in Pennsylvania and elsewhere. (Doc. 1, ¶ 17); (Doc. 13, ¶ 17); (Doc. 56-2, ¶ 8); (Doc. 58-1, ¶ 8). In and around 2004 and 2005, Uni-Marts sold approximately one-hundred fifty (150) of its stores through a public bidding process; under the terms of sale and related agreements, the store purchasers became Uni-Marts dealers. (Doc. 1, ¶ 17); (Doc. 13, ¶ 17); (Doc. 56-2, ¶ 9); (Doc. 58-1, ¶ 9).

On March 1, 2006, Uni-Marts received a letter dated February 28, 2006 from attorney Joseph A. Lach. (Doc. 1, ¶ 18-19); (Doc. 13, ¶ 18-19); (Doc. 56-2, ¶ 14); (Doc. 58-1, ¶ 14). The letter advised that attorney Joseph A. Lach and attorney Joseph Ferguson represent thirty (30) owners of over fifty-five (55) stores throughout Northeastern Pennsylvania who had entered into agreements for the operation of convenience stores/gas stations. (Doc. 1-4, p. 1). The letter alleged that as a result of "serious and material misrepresentations that were made with respect to

agreements and leases" entered into with Uni-Marts, their clients "have suffered serious damages and consequences." Id.

Following March 1, 2006, Uni-Marts and its counsel engaged in ongoing discussions with the store owners and their counsel to explore resolving the dispute by possible modifications to certain contracts and business relationships. (Doc. 1, ¶ 20); (Doc. 13, ¶ 20); (Doc. 13-2, p. 2); (Doc. 56-2, ¶ 15); (Doc. 58-1, ¶ 15). These business negotiations involved contract modifications and, if an amicable agreement could not be reached, litigation would be instituted. (Doc. 56-2, ¶¶ 16-17); (Doc. 58-1, ¶¶ 16-17).

After negotiations failed, the Alliance Action was filed in the Luzerne County Court of Common Pleas on January 2, 2007. (Doc. 1, ¶ 27); (Doc. 13, ¶ 27); (Doc. 56-2, ¶ 32); (Doc. 58-1, ¶ 32). The plaintiffs claimed that Uni-Marts omitted material facts and made material misrepresentations such as the costs and expenses in running the convenience stores. (Doc. 1-5, p. 3, ¶¶ 2-3). The complaint contained five causes of action against Uni-Marts: 1) fraud in the inducement, 2) negligent misrepresentations, 3) breach of the Fuel Supply Agreement, 4) breach of the Purchase Agreement, and 5) breach of the Right of First Refusal Agreement. (Doc. 1-5). On March 16, 2007, a "Final Judgment and Order" was entered by the Honorable Thomas F. Burke in the Alliance Action following a settlement agreement. Eagle International Services, Inc. v. Uni-Marts, LLC, No. 11-CV-2007 (Luz. Co. Nov. 16, 2007) (Burke, J). The terms of the settlement agreement, signed by all parties and filed with the court on November 13, 2007, was summarized in the notice to the class as follows:

> In summary, Uni-Marts has agreed to pay two million dollars ($2,000,000) in cash (the "cash Settlement amount"), and to pay $25,000 in Settlement administration costs. Uni-Marts has also agreed to make a variety of changes to the Contracts

and provide other benefits to Class Members. These changes will reduce Store owners' operating costs. The changes concern ATMs, cash registers, reimbursement for disruption because of underground tank repair or removal, relief from the minimum gallon penalty if competition develops, HVAC maintenance, options to purchase abandoned Stores, refunds of a portion of Trademark License Agreement payments, improvements to the process by which Uni-Marts consents to assignment or sale of Stores, an audit process to monitor possible overcharging for gasoline, and a process for return of gasoline deposits. Uni-Marts has also agreed to give up its claims against some Class Members and to release some Class Members from personal guaranties that they, or other persons on their behalf, have given to Uni-Marts.

(Doc. 56-25, pp. 66-67).

## III.   DISCUSSION

Initially, the Court will address Uni-Marts' argument that summary judgment is premature based upon the contract exclusion because the parties have not conducted discovery on this issue. (Doc. 58, p. 29). Uni-Marts points to this Court's June 18, 2008 Order arguing that discovery to this point has been *limited* to the notice issue. Id. This Court's Memorandum specifically stated that "[t]he parties are free to develop any other factual issues pertinent to a determination of this motion." (Doc. 34, p. 7). The motion in question was Federal's motion for judgment on the pleadings which was based soley on one ground: failure to meet the policies' notice requirements. (Doc. 20-2, pp. 8-16). Further, the joint stipulation of the parties states that "discovery relating to the subject of Federal's November 30, 2007 motion shall be completed." (Doc. 44, p. 3, ¶ 2). So it would appear that discovery was limited to the notice issue.

However, the stipulated motion which was adopted as an order also states that following discovery Federal may file a motion for summary judgment "based on any of the other coverage defenses asserted in its complaint." (Doc. 44, p. 3, ¶ 3). Federal's complaint alleges three (3)

8

grounds on which the party sought a declaration of no coverage including the policies' contract exclusions. (Doc. 1, pp. 9-10) (Coverage under the policies is barred by Uni-Marts' failure to meet the policies' notice requirements, by the contract exclusion of the policies, and by the absence of covered loss.). Further, with the substitution of the Trustee for Uni-Marts as the Defendant, Federal reserved all rights, claims, defenses or remedies and refused to limit any discovery. (Doc. 44, p. 3, ¶ 4).

It appears disingenuous for Uni-Marts, who had notice of Federal's grounds in the complaint almost five (5) years ago on July 26, 2007, and following a seventy-five (75) day discovery period agreed upon by both parties, to now argue that the issue is premature for summary judgment. Further, and most importantly, the interpretation of an insurance contract is a question of law for the court to decide. Reliance Ins. Co., 121 F.3d at 900; see also General Accident Ins. Co. of America, 692 A.2d at 1093 ("The task of interpreting a contract of insurance is generally performed by the court."). As seen in the case heavily relied upon by Uni-Marts for the contract exclusion issue, the decision of whether a cause of action is excluded because it is "arising out of" a contract entails an analysis of the allegations and counts of the complaint or amended complaint and the policy language. See McPeek v. Travelers Cas. & Sur. Co. of Am., 2006 U.S. Dist. LEXIS 28619 (W.D. Pa. May 10, 2006); see also (Western District of PA 2:06-cv-00114, Docs. 1, 3, 23 & 24) (The McPeek plaintiffs filed the complaint on January 27, 2006 and moved for preliminary injunction on March 3, 2006 and the cited decision came down on May 10, 2006, all prior to any discovery being done pursuant to the Case Management Scheduling Order dated May 18, 2006); see also Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 2007 U.S. Dist. LEXIS 86506 (M.D. Pa. 2007) , aff'd, 562 F.3d 591, 595 (3d Cir. 2009)

("[I]nterpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court."); <u>Frog, Switch & Mfg. Co., Inc.</u>, 193 F.3d at 746 ("In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured."); <u>Davis v. Maryland Ins. Co.</u>, 38 F. Supp. 2d 387, n.3 (E.D. Pa. 1999) (The court granted a motion to dismiss prior to discovery because "interpretation of an insurance contract is a matter of law for the court to decide, and given the command that all the court is to consider are the allegations in the complaint, no factual development is required for the determination to be made."); <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 908 A.2d 888, 896 (Pa. 2006) ("It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured."); <u>Snyder Heating Co., Inc. v. Pennsylvania Mfrs. Assoc. Ins. Co.</u>, 715 A.2d 483, 484 (Pa. Super. 1998) (The policy terms must be compared to the nature of the allegations in the complaint to determine whether, if the allegations are sustained, the insurer would be obligated to bear the expense of the judgment.).  Whether the Alliance action is excluded from coverage based on the exclusion is a question of law that can be decided at this time without further discovery.

Based on the contract exclusion contained in the insurance policies, Federal argues that the Alliance Action is a claim "based upon, arising from or in consequence of" Uni-Marts' alleged liability under the Purchase Agreements with store owners and, therefore, coverage for the action is barred as a matter of law.  (Doc. 57, pp. 19-28).  Uni-Marts maintains that the contract exclusion is inapplicable because the Alliance Action arose from Uni-Marts' pre-contractual conduct.  (Doc. 58, pp. 30-34).

The policies in question were Directors and Officers (D&O) claims-made policies which exclude from coverage claims "based upon, arising from, or in consequence of" liability under a contract. (Doc. 1-2, p. 26, and Doc. 1-3, p. 25). Like here, "[i]n instances where the D&O policy does contain a broad form contractual liability exclusion, courts have reached differing conclusions on whether tort claims arising from the insured's contractual relationship should also be excluded from coverage." 2-25 Liability of Corporate Officers and Directors § 25.02 (Matthew Bender & Company, Inc., 2011).[3] Further, courts have applied a range of tests and

---

[3]This treatise cites the following case law requiring coverage: McPeek, 2006 U.S. Dist. LEXIS 28619 (the court held that an exclusion barring coverage for claims arising out of any contract or agreement did not bar coverage for claims for fraudulent inducement that arose prior to the existence of the contract); Foodtown, Inc. v. National Union Fire Ins. Co., 2008 U.S. Dist. LEXIS 63629 (D.N.J. Aug 20, 2008) (refusing to apply contractual liability exclusion to breach of fiduciary claim arising out of insured's failure to fulfill a purchase agreement); American Guarantee & Liab. Ins. Co. v. Fojanini, 90 F. Supp. 2d 615 (E.D. Pa. 2000) (the court found that the "gist of the action" was tort and, therefore, refused to apply the exclusion). 2-25 Liability of Corporate Officers and Directors § 25.02 n.4 (Matthew Bender & Company, Inc., 2011). It also cites the following cases barring coverage for tort actions including negligent and fraudulent inducement: Spirtas Co. v. Federal Ins. Co., 521 F.3d 833 (8th Cir. 2008) (applying breach of contract exclusion to claims for breach of trust, conversion, and unjust enrichment where all of those claims "arose from" the contract); Julio & Sons Co. v. Travelers Cas. and Sur. Co., 591 F. Supp. 2d 651 (S.D.N.Y. 2008) (applying a breach of contract exclusion to causes of action for breach of contract, fraud, and negligent misrepresentation because all of the claims arose out of the parties' contractual relationship, but refusing to apply the exclusion to a breach of fiduciary duty claim because it did not depend on the existence of an agreement between the parties); Gemini Ins. Co. v. The Andy Boyd Co., 243 Fed. Appx. 814 (5th Cir. June 26, 2007); GE HFS Holdings, Inc. v. National Union Fire Ins. Co., 520 F. Supp. 2d 213 (D. Mass. 2007); Callas Enterprises, Inc. v. Travelers Indemn. Co., 193 F.3d 952 (8th Cir. 1999) (holding that no coverage existed for defamation, Lanham Act, and deceptive trade practices claims because those claims flowed from or had their origins in breach of contract); Stanford Ranch, Inc. v. Maryland Cas. Co., 89 F.3d 618 (9th Cir. 1996); WDC Venture v. Hartford Accident & Indemn. Co., 938 F. Supp. 671 (D. Haw. 1996); Davis v. Maryland Ins. Co., 38 F. Supp. 2d 387 (E.D. Pa. 1999); American States Ins. Co. v. Vortherms, 5 S.W.3d 538 (Mo. App. 1999); Redevelopment Authority v. Int'l Ins. Co., 685 A.2d 581 (Pa. Super. 1996); Owners Ins. Co. v. Reyers, 1999 Ohio App. LEXIS 4557 (Ohio App. Sept. 30, 1999); Perdue Farms, Inc. v. National Union Fire Ins. Co., 2005 U.S. App. LEXIS 10136 (4th Cir. June 2, 2005) ; N. Plainfield Bd. of Educ. v. Zurich Am. Ins. Co., 2008 U.S. Dist. LEXIS 39555 (D.N.J. May 15, 2008). Id. at n.8.

analyses in applying insurance policy contract exclusions.  See Looney Ricks Kiss Architects,

Inc. v. State Farm Fire & Casualty Co., 677 F.3d 250, 257 (5th Cir. 2012) (Louisiana would

apply a "but for" approach as opposed to an "incidental relationship approach" and Louisiana

courts won't apply the contract exclusion even though the same factual basis could support a

claim for breach of contract.); American Legacy Foundation, RP, v. National Union Fire

Insurance Co. of Pittsburgh, 623 F.3d 135, 143-44 (3d Cir. 2010) (Under Delaware law, in an

Individual and Organization Policy with a contract exclusion, coverage was barred for claims of

libel, slander, or disparagement, whether such claims sounded in tort or contract, so long as they

were "undeniably linked" to contractual claims.); Sport Supply Grp., Inc. v. Columbia Cas. Co.,

335 F.3d 453 (5th Cir. 2003) (Texas would apply an "incidental relationship" test to a contract

exclusion.); Callas Enters., Inc. v. Travelers Indem. Co. of America, 193 F.3d 952 (8th Cir. 1999)

(utilizing an "incidental relationship" test in analyzing a contract exclusion).  "Several courts

have applied a 'but for' test" and "[i]n states embracing this test, 'the injury is only considered to

have arisen out of the contractual breach if the injury would not have occurred but for the breach

of contract.'"  Looney Ricks Kiss Architects, Inc., 677 F.3d at 256, citing Houbigant, Inc. v. Fed.

Ins. Co., 374 F.3d 192, 202 (3d Cir. 2004); see also Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,

252 F.3d 608 (2d Cir. 2001); Aero Corp. v. Am. Int'l Specialty Lines Ins. Co., 676 F.Supp. 2d

738 (S.D. Ind. 2009); Auto Owners Ins. Co. v. LA Oasis, Inc., No. 2:04-cv-174, 2005 U.S. Dist.

LEXIS 43565, 2005 WL 1313684 (N.D. Ind. May 26, 2005).  "In other states, which interpret the

'arising out of' phrase of the 'breach of contract' exclusion more broadly, courts apply an

'incidental relationship' test, such that the exclusion applies to preclude coverage as long as the

contract bears some relationship to the dispute."  Looney Ricks Kiss Architects, Inc., 677 F.3d at

256, citing Sport Supply Grp., Inc., 335 F.3d 453; Callas Enters., Inc., 193 F.3d 952.

Here, in determining the issue of whether the contract exclusion applies, an interpretation of the policy language under Pennsylvania law must be made. Uni-Marts' insurance policies with Federal include contract exclusions which state that no coverage will be available under Section C (Corporate Liability Coverage):

> based upon, arising from, or in consequence of any actual or alleged liability of an **Insured Organization** under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an Insured Organization would have been liable in the absence of the contract or agreement.

(Doc. 1-2, p. 26, and Doc. 1-3, p. 25) (emphasis in originals). This language, "based upon, arising from, or in consequence of," is not ambiguous. See McCabe v. Old Republic Ins. Co., 228 A.2d 901, 903 (Pa. 1967) (Interpreting "arising out of" in the context of an insurance policy exclusionary clause as unambiguous requiring a construction within the plain meaning of the language which "means causally connected with, not proximately caused by. 'But for' causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy"); Forum Insurance Co. v. Allied Security, Inc., 866 F.2d 80, 81 (3d Cir. 1989) (recognizing McCabe as governing Pennsylvania law); see also Essex Ins. Co. v. RMJC , Inc., 306 Fed. Appx. 749, 752 (3d Cir. 2009) ("'arising out of' is not an ambiguous term" in an exclusion for assault and battery in a corporate general liability policy) (not precedential); see also Hussey Copper, Ltd. v. Arrowood Indem. Co., 391 Fed. Appx. 207, 209-10 (3d Cir. 2010) (finding pollution exclusion using the phrase "arising out of" is unambiguous language, not reasonably susceptible to multiple interpretations and applying the "'plain and ordinary meaning' of the broad pollution exclusion

---

[4]Similar meaning will be given to the phrase "arising out of" and "arising from." See Spirtas Co. v. Federal Insurance Co., 521 F.3d 833, 836 (8th Cir. 2008).

clause unambiguously") (not precedential); United States Fidelity and Guaranty Co., 121 Fed.

Appx. at 979-80 (finding pollution exclusion using the phrase "arising out of" is unambiguous)

(unpublished opinion).  Further, the contract exclusion in its entirety is not susceptible to more

than one interpretation or meaning but is unambiguous, albeit broad.  See Madison Const. Co.,

735 A.2d at 106.  "Where a provision of a policy is ambiguous, the policy provision is to be

construed in favor of the insured and against the insurer . . . . Where, however, the language of

the contract is clear and unambiguous, a court is required to give effect to that language."

Minnesota Fire and Casualty Co., 855 A.2d at 861 (citing Gene & Harvey Builders, Inc., 517

A.2d at 913).  Accordingly, the Court will give effect to the plain meaning of the policy

language, and will conduct a "but for" analysis.  See McCabe, 228 A.2d at 903; see also Roman

Mosaic & Tile Co. v. Aetna Cas. & Sur. Co., 704 A.2d 665 (Pa. Super. 1997) (Under

Pennsylvania law, the term "arising out of" has been equated with "but for" causation.); Erie Ins.

Exchange v. Eisenhuth, 451 A.2d 1024, 1025 (Pa. Super. 1982) (citing Manufacturers Casualty

Ins. Co. v. Goodville Mutual Casualty Co., 170 A.2d 571 (Pa. 1961)); Essex Insurance Co., 306

Fed. Appx. at 752 (analyzing an assault and batter exclusion under a commercial general liability

insurance policy and noting that Courts applying Pennsylvania law have held ["arising out of"]

denotes "but for" causation both where it defines what is included in coverage and where it

delineates exclusions) (citing Forum Ins. Co., 866 F.2d at 82; Madison Constr. Co., 735 A.2d at

109-10).

This Court will also conduct a "gist of the action" analysis.[5]  Federal suggests that this

---

[5]A determination as to what particular test or analysis the Pennsylvania Supreme Court
would use in interpreting this particular contract exclusion need not be made as the allegations of
the underlying complaint lead to the same conclusion under the plain meaning of the policy

Court follow a "gist of the action" doctrine to determine whether these tort claims arise out of the contract and are thus excluded from coverage. (Doc. 57, pp. 24-26).  Uni-Marts argues that the cases cited by Federal which utilize the "gist of the action doctrine" are inapplicable here. (Doc. 58, pp. 33-34).

The Pennsylvania Superior Court uses the "gist of the action doctrine"[6] in determining between tort and contract claims and has done so in interpreting similar contract exclusions. Redevelopment Authority of Cambria County v. International Ins. Co., 685 A.2d 581 (Pa. Super. 1996) (en banc), appeal denied, 695 A.2d 787 (Pa. 1997); Phico Insurance Co. v. Presbyterian Medical Services Corp., 663 A.2d 753 (Pa. Super. 1995).  In Phico, Presbyterian Medical had a D&O policy which contained an exclusion for claims arising in connection with the breach of oral and written agreements.  663 A.2d at 756.  The plaintiff in the underlying action entered into a contract with the insured for the management of a nursing home and alleged that the insured was grossly negligent and committed willful misconduct in the various asserted acts of mismanagement.  Id.  The court noted that whether the exclusion applies requires a determination as to whether the claims asserted in the complaint sound in tort or contract and the court, following the logic of two prior cases, applied the following: "to be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral."

---

words, the "but for" test, and the "gist of the action" doctrine.  See TIG Insurance Co. v. Nobel Learning Communities, Inc., 2002 U.S. Dist. Lexis 10870, *31-32 (E.D. Pa. 2002) (conducting a "but for" and "gist of the action" analysis).

[6]The Superior Court of Pennsylvania considers the "gist of the action doctrine" viable in Pennsylvania noting that the "[the Supreme Court of Pennsylvania] is clearly aware of the frequent use of this doctrine by both the lower and federal courts of this state, but has declined at least three opportunities to put an end to its use."  Reardon v. Alleghany College, 926 A.2d 477, 486 (Pa. Super. 2007).

Id. at 757.  The court further noted that "the important difference between contract and tort

actions is that the latter lie from the breach of duties imposed as a matter of social policy while

the former lie for the breach of duties imposed by mutual consensus."  Id.  The court held that

the cause of action arose out of the performance of the management agreement and, although

gross negligence and willful misconduct were alleged, the agreement was unquestionably not

collateral to any of the claims.  Id. at 758.  The court also stated in applying the exclusion "that to

make Phico responsible under the insurance policy would effectively change its status from a

mere insurer to a party to the transaction."  Id.

The United States District Court for the Eastern District of Pennsylvania has applied the

"gist of the action" doctrine to determine whether a contract exclusion applied.  Continental

Casualty Co. v. County of Chester, 244 F. Supp. 2d 403 (E.D. Pa. 2003); see also Nutrisystem,

Inc. v. National Fire Insurance of Hartford, 2004 U.S. Dist. LEXIS 23496, *5-6 (E.D. Pa. 2004).

In Continental Casualty Co., the insurer sought a declaration that it had no duty to defend or

indemnify Chester County pursuant to a public officials liability policy.  Continental Casualty

Co., 244 F. Supp. 2d at 405.  The policy excluded coverage for "any 'claim' arising out of a

breach of contract."  Id. at 409.  The court noted:

> For coverage purposes, before a claim can "be construed as a tort action, the
> wrong ascribed to the defendant must be the gist of the action with the contract
> being collateral."  Redevelopment Auth. of Cambria County v. International Ins.
> Co., 454 Pa. Super. 374, 685 A.2d 581, 590 (Pa. Super. Ct. 1996) (quoting Phico
> Ins. Co., 663 A.2d at 757) (emphasis added).  Consequently, when analyzing the
> policy and the allegations in the counterclaim, the focus is on what constitutes the
> gist of the particular count.  In other words, whether the "arising out of a breach of
> contract" exclusion applies turns on whether the cause of action is characterized
> as sounding in contract or in tort.

Id.  The court held that a count alleging a substantive due process claim under 42 U.S.C. § 1983

16

asserts a tort cause of action and not a contract based one, and that the "'arising out of contract' exclusion does not apply." Id. at 410-11. In reaching its determination, the court determined that the distinction between a contract and tort action is found in the source of the duties imposed: tort actions lie from the breach of duties imposed as a matter of social policy while contract actions lie for the breach of duties imposed by mutual consensus between the parties. Id. at 409, citing City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 709, 143 L. Ed. 2d 882, 119 S. Ct. 1624 (1999).

The United States District Court for the Western District of Pennsylvania has also held that the "gist of the action" doctrine applies to an interpretation of broad contract exclusions, including "broader 'arising out of' and 'based upon' language," like that sub judice. Fleming Fitzgerald & Associates, Limited v. U.S. Specialty Insurance Co., 2008 U.S. Dist. LEXIS 76613, *33 (W.D. Pa. 2008). That Court noted that "[b]ased upon the law of Pennsylvania and the law of this Circuit, the gist of the action doctrine, the determination of whether a cause of action sounds in contract or tort, applies in insurance coverage cases when the breach of contract exclusion at issue broadly excludes contractually-based claims." Id. at *35-36, citing Phico, 663 A.2d at 756 (excluding coverage for "claims arising in connection with the breach of oral and written agreements"); Nationwide Mut. Ins. Co., 2007 U.S. Dist. LEXIS 86506 (excluding coverage for "contractual liability"); Continental Cas. Co., 244 F. Supp. 2d at 409 (excluding coverage for "any 'claim' arising out of a breach of contract, or out of liability assumed by an insured under any contract or agreement").

Here, an analysis of the allegations of the complaint will be made under the plain language of the contract exclusion, under the "but for" test, and under the "gist of the action"

doctrine.

**Analysis of Allegations of the Complaint**[7]

On January 2, 2007, the Alliance Action was brought by a class of plaintiffs who purchased, and subsequently operated, convenience stores from Uni-Marts. (Doc. 1-5, p. 3, ¶ 1). The complaint contained five causes of action against Uni-Marts: 1) fraud in the inducement, 2) negligent misrepresentations, 3) breach of the Fuel Supply Agreement, 4) breach of the Purchase Agreement, and 5) Breach of the Right of First Refusal Agreement. (Doc. 1-5). Based on the complaint, Uni-Marts engaged in a wide range of wrongful conduct including omitting material facts and making material misrepresentations regarding the costs and expenses in running the convenience stores, and that Uni-Marts violated its contractual obligations to plaintiffs by charging in excess of the contract price for various items, including gasoline. (Doc. 1-5, pp. 3-4, ¶¶ 1-5). In 2004, Uni-Marts solicited the Alliance Action plaintiffs to purchase convenience stores by producing How-To-Buy Booklets and conducting How-To-Buy Seminars in various locations. (Doc. 1-5, pp. 6-7, ¶¶ 20-22). To induce purchases, Uni-Marts also provided a Property Specific Package with respect to each store that contained "Three year store level profit statements certified by Uni-Marts' CFO for each store being offered" and other certified financial information including salaries, insurance expenses, taxes and licenses, and miscellaneous expenses. (Doc. 1-5, p. 8, ¶¶ 23-25). These historical financial statements made material misrepresentations and omitted important material costs. (Doc. 1-5, pp. 8-9, ¶¶ 25-26). The

---

[7]"[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint." Mutual Benefit Insurance Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

Property Specific Package contained a Fuel Supply Agreement in which Uni-Marts agreed to sell gasoline to the purchaser at a certain price and a Right of First Refusal Agreement by which Uni-Marts gave each plaintiff the right of first refusal in the event Uni-Marts determined to sell the real estate on which the store was located. (Doc. 1-5, pp. 9-10, ¶¶ 27 & 32). Uni-Marts breached both of these agreements by overcharging for gasoline and by negotiating bulk sales agreements simultaneously to these contracts which had the effect of nullifying and erasing the supposed rights of first refusal. (Doc. 1-5, pp. 10-11, ¶¶ 28 & 32). In consummating the sales, Uni-Marts and the plaintiffs also entered into Purchase and Sale Agreements in which both parties "acknowledged that [each] has not relied, and is not relying upon, any information (other than store-level profit loss information)... that may have been given by or made by or on behalf of [Uni-Marts]". (Doc. 1-5, p. 10, ¶ 30) (citing the Purchase Agreement). In purchasing the stores, the plaintiffs relied on the material omissions and misstatements in the How-To-Buy, the Seminar Booklet, the Property Specific Package as well as the Purchase Agreement, the Fuel Supply Agreement, and the Right of First Refusal Agreement, and the plaintiffs would not have purchased the stores had Uni-Marts disclosed the whole truth. (Doc. 1-5, p. 11, ¶ 33). The complaint sought monetary damages and a recision of the Purchase Agreements. (Doc. 1-5, p. 17).

The determination of coverage here turns on the plain language of the policy and the allegations of the Alliance Action. There is no question that Counts Three through Five of the Alliance Action are based upon Uni-Marts' alleged liability under a written contract. See (Doc. 1-5) (Counts 3-5 are Breach of the Fuel Supply Agreement, Breach of the Purchase Agreement, and Breach of the Right of First Refusal Agreement); see also (Doc. 58, pp. 25-29) (In its

memorandum in opposition to the motion, Uni-Marts makes no argument regarding the breach of contract counts). What the parties do dispute is whether the negligent misrepresentation and fraud in the inducement counts of the Alliance Action are "based upon, arising from, or in consequence of" the breach of contract claims.

Relying on McPeek, 2006 U.S. Dist. LEXIS 28619, Uni-Marts argues that the contract exclusion should be strictly construed against the insurer and that the negligent misrepresentation and fraud claims arise out of alleged pre-contractual misrepresentations and omissions and stand alone from the contract claims. (Doc. 58, pp. 26-27).

In McPeek the plaintiff officers, McPeek and Hegert, filed a declaratory judgment and bad faith action against their insurer seeking coverage for an action in which they, and one other officer defendant, Geramita, and three corporate defendants, Main Medical Holding, LLC, Mid-Atlantic Imaging Network, Inc., and Main Medical Ventures, LLC made "a variety of fraudulent and/or negligent misrepresentations and/or omissions in connection with the purchase of two notes." McPeek, 2006 U.S. Dist. LEXIS 28619, *3-4. The plaintiffs sought coverage under their Health Care D&O policy for the underlying Western District of Pennsylvania action, Gilliland, et al. v. Germita, et al., Civ. No. 05-CV-1059. See (United States District Court for the Western District of Pennsylvania (W.D. Pa.) 2:06-cv-00114, Doc. 1, p. 1, ¶ 1). The policy language in the Health Care Directors and Officers policy is very similar to that sub judice and excludes coverage for a claim "for or arising out of any actual or alleged liability of any Insured under any express contract or agreement; provided, however, that this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement." (W.D. Pa. 2:06-cv-00114, Doc. 1, p. 15); see also McPeek, 2006 U.S. Dist. LEXIS 28619, *9. The underlying

20

action contained counts of securities fraud, fraudulent misrepresentations, and negligent misrepresentations against the officer plaintiffs, McPeek and Hegert, and contained breach of contract counts against the corporate entities. McPeek, 2006 U.S. Dist. LEXIS 28619, *5-7.

The Court observed that neither plaintiff seeking coverage had been sued for breach of contract but noted that the causes of action are not dispositive of the issue. McPeek, 2006 U.S. Dist. LEXIS 28619, *11. The tortious conduct for which they were being sued, the Court stated, preceded and induced the purchase of the notes which were breached and are "based upon (pre-contract) fraud, rather than contractual liability." Id. The Court determined that the securities fraud, negligent misrepresentation, and fraudulent misrepresentation claims "do not 'aris[e] out of any alleged liability of any Insured under any express contract or agreement'" and are not covered by the contract exclusion. McPeek, 2006 U.S. Dist. LEXIS 28619, *11-13.

Uni-Marts argues that the alleged pre-contractual promises in McPeek are in no way different and the plaintiffs in both underlying actions "would not have entered into the agreements but for the misleading statements and omissions made by the policyholders." (Doc. 58, p. 32). The underlying amended complaint in McPeek alleged that the plaintiff investor relied upon and was induced by false background and financial information which included false or misleading statements and/or omitted material information produced by McPeek about the company to which the loan was being made showing "a history of good performance and favorable plans and projections for its future operations and financial performance." (W.D. Pa. 2:06-cv-00114, Doc. 1-1, pp. 2-6). The damages sought in the relevant counts were judgment on the notes and the amounts due and owing plus interest, actual damages, and punitive damages. (W.D. Pa. 2:06-cv-00114, Doc. 1-1, pp.14-15). While it cannot be stated, as Uni-Marts does,

that "these allegations are identical," it can be stated that this factual situation is extremely similar. Both complaints allege tort counts of fraud and negligent misrepresentation, in addition to breach of contract counts, based on false or misleading financial information used to induce the plaintiffs into the contract.

Federal tries to distinguish McPeek by arguing that Uni-Marts was a party to the contract in question and was being sued for breach of contract and McPeek and the other officer were not. (Doc. 57, p. 27). Also, Federal argues that the alleged negligent misrepresentations and fraud were expressly made part of the contracts and that in the absence of the contracts, Uni-Marts would not have been liable. (Doc. 57, pp. 24-25). The latter argument has merit and highlights a critical distinction. Based on the fact that the alleged financial misrepresentations were incorporated into the Purchase Agreements and therein warrantied by Uni-Marts as further explained below, this Court will not mirror the holding in McPeek, as the factual scenarios differ.

The McPeek Court strictly construed the contract exclusion against the insurer. McPeek, 2006 U.S. Dist. LEXIS 28619, *11. The McPeek Court held:

> Given the nature of these allegations and the principle that exclusions in insurance policies are strictly construed against the insurer, it is more appropriate to characterize the claims against McPeek and Hergert as "arising out of" pre-contract misdeeds, rather than "arising out of" the notes (contracts) themselves.

Id. at *11-12 (emphasis added). As noted above, it is determined that the exclusion language "arising from,"[8] while broad, is unambiguous in the context of the contract exclusion, and where

---

[8]The Undersigned tends to agree with the late Pennsylvania Supreme Court Justice Ralph J. Cappy that the term "arising out of" is at times ambiguous and whether it is ambiguous depends on the context in which it is employed. Madison Construction, 557 Pa. at 612-613 (Dissenting Opinion). However, the Pennsylvania Supreme Court and the United States Third Circuit Court of Appeals have consistently determined that the terms "arising out of" and

"the language of the contract is clear and unambiguous, a court is required to give effect to that language." Greenfield, 855 A.2d at 861 (citing Gene & Harvey Builders, Inc., 517 A.2d at 913). Accordingly, this Court will not read this contract exclusion against the insured but instead, because it is determined that the language is unambiguous, will give effect to the language and construe it according to the plain and ordinary meaning of its terms. See Frog, Switch & Mfg. Co., 193 F.3d at 746; Pac. Indem. Co., 766 F.2d at 760-61; see also Greenfield, 855 A.2d at 861 (citing Gene & Harvey Builders, Inc., 517 A.2d at 913).

Giving plain meaning to the unambiguous language of the contract exclusion, the fraudulent inducement and negligent misrepresentation claims certainly are "based upon, arising from, or in consequence of any actual or alleged liability" under the contracts. (Doc. 1-2, p. 26, and Doc. 1-3, p. 25). The tort claims arise from the same essential facts and circumstances as those which underlie the breach of contract claims. The tort claims are for Uni-Marts' violations of "the representations, warranties, and express or implied covenants of the Purchase Agreement and the Right of First Refusal Agreement and, by overcharging for gasoline deliveries, the Fuel Service Agreement." (Doc. 1-5, p. 12). This is particularly true since the financial information relied upon by the class plaintiffs was incorporated into the Purchase Agreements. (Doc. 1-5, p. 10, ¶ 30). As part of the Purchase Agreements, Uni-Marts made certain "Representations, Warranties and Covenants by the Seller" including that "the store-level profit and loss information made available by Seller to Purchaser is true and correct in all material respects."

---

"arising from" are unambiguous. See McCabe, 228 A.2d at 903; Madison Construction, 557 Pa. at 606-608; Essex Ins. Co., 306 Fed. Appx. at 752; Hussey Copper, Ltd, 391 Fed. Appx. at 209-210; United States Fidelity and Guaranty Co., 121 Fed. Appx. at 979-80; see also Smith v. Continental Casualty Co., 2008 U.S. Dist. LEXIS 76818, *36, n.11 (M.D. Pa. 2008).

(Doc. 56-26, pp. 9-10) (Purchase Agreement ¶ 7(c)); (Doc. 1-5, pp. 9-10). The class plaintiffs'

damages stem from their reliance "on the material omissions in the misstatements in the How-

To-Buy, the Seminar Booklet, and the PSP" (which were incorporated into the Purchase

agreements in the Representations, Warranties and Covenants by the Seller), and "the express

and implied covenants, representations and warranties in the Purchase Agreement, the Fuel

Supply Agreement, and the Right of First Refusal Agreement." (Doc. 1-5, p. 11, ¶ 33).

Accordingly, the fraud in the inducement and negligent misrepresentation claims are based upon,

arise from, or are in consequence of Uni-Marts' liability under the agreements.

Additionally, under the more stringent "but for" test, the store owners' tort claims fit

within the policy exclusion. Under the "but for" test, the question becomes would the store

owners' fraud in the inducement and negligent misrepresentations claims exist even in the

absence of the contracts and breach thereof. The answer to that question is no. Had the class

plaintiffs not entered into the contracts and had Uni-Marts not breached the contracts, there

would be no independent tort claims. The "but for" test may also be construed as, whether, but

for the underlying breach of contract, the injuries for which the store owners have sued would

have occurred. The precise damages sought by the class plaintiffs were:

> . . . declaration that the Purchase Agreement is *void ab initio* and subject to
> recision. Plaintiffs are also entitled to damages for the period after closing. In the
> alternative, plaintiffs seek judgment in their favor and in favor of the Class and
> against defendants in an amount in excess of $50,000, exclusive of interest,
> represented by the difference between the price plaintiffs and Class members paid,
> and the actual value of the Stores. Further damages include the amounts plaintiffs
> and Class members have over paid for rent and for gasoline; reasonable attorneys'
> fees and costs; and such other and further relief as may be proven at trial or as the
> Court deems proper.

(Doc. 1-5, pp. 17-18). The heart of the damages sought ring of breach of contract damages and

the injuries undoubtedly flow from the contractual relationship between the parties.  See

Houbigant, Inc., 374 F.3d at 203.  Further, and most relevant, the injuries suffered by the class

plaintiffs would not have occurred had there been no contracts and no breach thereof.

Accordingly, under the "but for" test, the fraud in the inducement and negligent

misrepresentations counts in the Alliance Action are excluded.

Even under the "gist of the action" doctrine, the fraudulent inducement and negligent

misrepresentation claims are barred and coverage for them is not required due to the contract

exclusion.  Under this test,"to be construed as a tort action, the wrong ascribed to the defendant

must be the gist of the action with the contract being collateral."  Phico, 663 A.2d at 756.  "[T]he

important difference between contract and tort actions is that the latter lie from the breach of

duties imposed as a matter of social policy while the former lie for the breach of duties imposed

by mutual consensus."  Id.  "In other words, a claim should be limited to a contract claim when

'the parties' obligations are defined by the terms of the contracts, and not by the larger social

policies embodied by the law of torts.'"  eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d

10, 17 (Pa. Super. 2002), citing Bohler-Uddeholm Am., Inc., v. Ellwood Group, Inc., 247 F.3d

79, 104 (3d Cir. 2001), cert. denied, 534 U.S. 1162, 122 S. Ct. 1173, 152 L. Ed. 2d 116 (2002),

quoting, Bash v. Bell Tel. Co., 601 A.2d 825, 830 (Pa. Super. 1992).

Analyzing the allegations of the class plaintiffs' complaint under the gist of the action

doctrine, it is determined that the fraud in the inducement and negligent misrepresentation claims

are barred as the financial information that is the basis for the claims are part of the contract.

Generally, "fraud in the inducement of a contract would not necessarily be covered by [the gist of

the action doctrine] because fraud to induce a person to enter into a contract is generally

collateral to (i.e., not 'interwoven' with) the terms of the contract itself." eToll, Inc., 811 A.2d at

17, citing Foster v. Northwestern Mutual Life, 2002 U.S. Dist. LEXIS 15078 (E.D. Pa. July 25,

2002); Asbury Auto. Group LLC, v. Chrysler Ins. Co., 2002 U.S. Dist. LEXIS 117 (E.D. Pa. Jan.

7, 2002) (fraud claim based on false statement that an insurance policy would include a particular

sort of coverage, thus inducing the purchase of the insurance policy, was not barred by the "gist

of the action" test where the written policy which did not include the promised coverage was not

sent to the plaintiff for several months); compare, Sunquest Info. Sys. Inc. v. Dean Witter

Reynolds, Inc., 40 F. Supp. 2d 644, 651-52 (W.D. Pa. 1999) (applying "gist of the action"

doctrine to bar fraud claims arising from failure to disclose critical information about a

corporation before a merger; agreement contained an integration clause); Titelman v. Rite Aid

Corp., 2001 U.S. Dist. LEXIS 24049 (E.D. Pa. Nov. 9, 2001) (fraud-in-the-inducement claim

barred by "gist of the action" doctrine where contract at issue was fully integrated); but see

Horizon Unlimited, Inc. v. Silva, 1998 U.S. Dist. LEXIS 2223, *13-17 (E.D. Pa. 1998)

(dismissing fraud claims under "gist of the action" doctrine where plaintiff claimed that

defendant made intentional misstatements in promotional literature about the amount of time it

would take to build the product at issue).  However, Courts interpreting Pennsylvania law "have

not carved out a categorical exception for fraud, and have not held that the duty to avoid fraud is

always a qualitatively different duty imposed by society rather than by the contract itself." eToll,

Inc., 811 A.2d at 19.  "Rather, the cases seem to turn on the question of whether the fraud

concerned the performance of contractual duties." Id.  "If so, then the alleged fraud is generally

held to be merely collateral to a contract claim for breach of those duties." Id.  Here, based on

the allegations and the damages sought, and based on the fact that the fraudulent financial

information was made part of the "Representations, Warranties and Covenants by the Seller," the class plaintiffs' fraud in the inducement and negligent misrepresentation claims are "interwoven" and fully integrated into the contract and, certainly, the contract claim is not collateral. See (Doc. 56-26, pp. 9-10) (Purchase Agreement ¶ 7(c)); (Doc. 1-5, pp. 9-10). The duties breached were created and grounded in the contract itself. See eToll, Inc., 811 A.2d at 22, citing Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc., 2002 U.S. Dist. LEXIS 1460 (E.D. Pa. 2002), Like in eToll, Inc., the alleged financial misrepresentations are inextricably intertwined in the obligations of the contract itself and the contract claims. Further, the fraud was not so tangential to the parties' relationship as to make the contract collateral and the damages sought would be compensable in an ordinary contract action. See eToll, Inc., 811 A.2d at 20-21. Accordingly, the gist of the class plaintiffs' fraud in the inducement and negligent misrepresentation claims lie in contract, and therefore, the contract exclusion bars coverage for these counts.

Also applicable here is the Pennsylvania Superior Court's reluctance to make an insurer "a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit" by mandating coverage. See Phico, 663 A.2d at 757-758 and Toombs NJ Inc. v. Aetna Casualty & Surety Co., 591 A.2d 304, 306 (Pa. Super. 1991). Requiring Federal to cover this loss, which in its essence is derived from a business agreement gone bad[9], would be greatly expanding the coverage of the D&O policy beyond that

---

[9]While this determination that the essence of this action is a business deal gone bad was made solely from an analysis of the complaint, it is telling that the class plaintiffs' attorney describes the claims "as a business issue that [he] would like to resolve as a business issue." (Doc. 56-16, p. 2); (Doc. 58-11, p. 2). What is also telling is that the class plaintiffs wanted the benefit of the deal they thought they were entering into and the opportunity to remain in business

which is called for by its plain language.

## IV.    Conclusion

It is determined that all counts against Uni-Marts in the Alliance Action are based upon,

arise from, or are in consequence of Uni-Marts' liability under the agreements executed by Uni-

Marts and the class plaintiffs regarding the purchase of Uni-Marts' stores.  Therefore, the

contract exclusion contained in Uni-Marts' insurance policies with Federal applies and Federal is

not liable to indemnify or defend Uni-Marts in the Alliance Action.

Date: August 17, 2012

_____
United States District Judge

---

successfully and that the list of issues to be renegotiated at the settlement conferences included
gasoline rates, rent, overhead expenses, compliance with the purchase agreement, first right of
refusal, trademark license fees, ATM contracts, building insurance and deposit funds.  (Doc. 58-
13, pp. 2-5).